IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| JIM ANGLEMYER, | * |
| Plaintiff, | * |
| v. | * Case No.: 8:18-cv-02198-PWG |
| WCS CONSTRUCTION, LLC et al., | * |
| Defendant. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Jim Anglemyer, the one-time president of a construction company, accuses his former employer and an affiliated company of age-based discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"). The companies have moved for dismissal, arguing that the Complaint itself effectively acknowledges they had another, legitimate reason for firing him. To bolster this argument, they urge the Court to take judicial notice of a "whistleblower" charge Mr. Anglemyer filed with the Occupational Safety and Health Administration ("OSHA") soon after his termination. That charge, which they have attached as an exhibit to their motion to dismiss, accuses his employer of retaliating against him for the way he responded to a staffer's threat of workplace violence.

My reading of the Complaint does not support the company's contentions. Their motion makes much of the Complaint's lone allusion to Mr. Anglemyer's handling of the staffer's threat, but it takes that reference out of context. In the end, I cannot agree that the mere mention of that incident strips his ADEA claims of plausibility. I also fail to see why his decision to challenge his

1

termination on alternate grounds in an OSHA whistleblower charge should preclude him from seeking relief under the ADEA in a civil lawsuit. The motion to dismiss is therefore denied.

## FACTUAL BACKGROUND

Mr. Anglemyer has brought this suit under the ADEA, a federal law that aims to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 28 U.S.C. § 621(b). At the time of the events at issue, he was 68 years old. Compl. ¶ 23.

The story the Complaint tells is short, spanning just two pages of double-spaced text. It starts by noting that Mr. Anglemyer had been president of WCS Construction, LLC ("WCS") since 2001. *See id.* ¶ 8. As president, it says, he reported to Chris Smith, who owned William C. Smith & Co., Inc. ("Smith & Co."), with which WCS was affiliated. *See id.* ¶ 10.

The Complaint then explains that on May 1, 2017, Mr. Anglemyer sent Mr. Smith a letter "concerning his employment status with WCS and his continued service as its President." *Id.* ¶ 11. The letter "discussed his contributions to WCS, noting, in particular, that the company had netted $20 million in profits in the 16 years he had worked there. *See id.* ¶ 12. The letter "expressed the need for an increase in salary to a level that more accurately reflected his contributions and value." *Id.*

The two men met about a month later, on June 6, 2017. *See id.* ¶ 13. During the meeting, the Complaint alleges, Mr. Smith "pushed him on the issue of retirement," at one point commenting, "[Y]ou're not getting any younger." *Id.* ¶ 14. Mr. Anglemyer, concerned that Mr. Smith was thinking of replacing him with a younger employee, "discussed and complained" during the meeting "that his age was a factor in Mr. Smith's decision to push him into retirement." *Id.*

¶¶ 15-16. Negotiations began, and at Mr. Smith's behest, Mr. Anglemyer agreed to a deal that would keep him on as president until the end of 2017, then bring him back as a consultant. *See id.* ¶ 16. They finalized the agreement on June 16, 2017. *See id.* ¶ 17. Under the final terms, Mr. Anglemyer would work until the end of 2017, receive an additional $325,000 for serving as a retired consultant for 2018, obtain three bonuses totaling $125,000, and take ownership of a Ford F-350 truck belonging to the company. *See id.*

The Complaint next refers to a meeting between Messrs. Anglemyer and Smith on July 11, 2017. *See id.* ¶ 18. It alleges the purpose of the meeting was "supposedly to discuss an incident involving Mr. Anglemyer's handling of another employee's threat of workplace violence." *Id.* The Complaint provides no details about that incident. It alleges, though, that before the meeting was over, Mr. Smith fired Mr. Anglemyer "and prematurely ended their contract, informing Mr. Anglemyer that he was no longer a part of WCS." *Id.* Mr. Smith, according to the Complaint, has since refused to pay him for the remainder of 2017 or the agreed-upon consulting work, has denied him the three bonuses, and has not transferred ownership of the truck. *See id.* ¶ 20. Meanwhile, the company promoted another employee, D. Scott Vossler, to replace Mr. Anglemyer as WCS's president. *See id.* ¶ 19. Mr. Vossler is between 15 and 20 years younger than Mr. Anglemyer. *See id.*

Mr. Anglemyer filed this federal lawsuit against WCS and Smith & Co. (collectively, "Defendants") on July 17, 2018, asserting two claims under the ADEA: one claim of age-based discrimination and another of retaliation. Defendants have since moved to dismiss both claims. *See* Mot. to Dismiss, ECF No. 15. Their motion includes, as an exhibit, a copy of a whistleblower charge Mr. Anglemyer filed with the Occupational Safety and Health Administration ("OSHA") on August 9, 2017. *See* ECF No. 15-2. The charge, of which Defendants urge me to take judicial

notice, appears to fill in some details about the incident Mr. Anglemyer here alleges Mr. Smith "supposedly" wanted to discuss at the July 11, 2017 meeting that ended in Mr. Anglemyer's termination. In short, it alleges that a member of a project team made a threat of workplace violence, and that Mr. Anglemyer, upon learning of the threat, both directed an assistant to report the incident to the human resources office and disclosed the episode to the "purported subject of the alleged threats." *Id.* at 7. It concludes with an assertion that Mr. Anglemyer was fired for taking these actions. *See id.*

Defendants' motion is fully briefed. *See* ECF Nos. 15, 20, 21. No hearing is necessary. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

A 12(b)(6) motion "tests the sufficiency" of the plaintiff's complaint. *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 677 (D. Md. 2012). Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Beyond that, the Supreme Court has held that claims for relief must be "plausible," specifying that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.,*

*Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). A court also may consider matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

Defendants have moved to dismiss each of Mr. Anglemyer's two ADEA claims. I will address each claim in turn.

### Count 1: ADEA Discrimination

Count I accuses Defendants of discriminating against Mr. Anglemyer on the basis of his age when they terminated his employment on July 11, 2017. *See* Compl. ¶ 23. Defendants contend this claim must be dismissed because the Complaint does not plausibly allege that, "but for" discrimination on the basis of his age, he would not have been terminated. *See* Mot. to Dismiss 6. This is so, they argue, for two closely related reasons. First, they say, the Complaint itself acknowledges that Mr. Anglemyer's employer "was dissatisfied with his handling of another employee's threat of workplace violence." *Id.* at 9. And second, the OSHA whistleblower complaint undermines his claim that he would not have been fired "but for" age-based discrimination. *See id.* at 13. As I will explain, I do not find either of these arguments persuasive.

### A.

I start, though, with basic principles. The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To succeed on an ADEA discrimination claim, a plaintiff ultimately "must prove, by a preponderance of the evidence . . . , that age was the 'but for' cause of the challenged employer decision." *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *see Arthur v. Pet Dairy*, 593 F. App'x

211, 216 (4th Cir. 2015) (per curiam) ("[I]t remains the plaintiff's ultimate burden to prove that his age was the but-for cause of the adverse employment action."). The plaintiff may satisfy this burden "in either of two ways: (1) through presentation of direct evidence of intentional discrimination; or (2) through the burden-shifting framework" established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Fisher v. Winston-Salem Police Dep't*, 28 F. Supp. 3d 526, 529 (M.D.N.C. 2014).

The plaintiff's choice between these two methods of proof becomes critical at trial. *See Chen v. Md. Dep't of Health & Mental Hygiene*, No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016). If, at that point, the plaintiff has opted to prove his case under the *McDonnell Douglas* framework, his first task will be to "establish a presumption of discrimination by making out a prima facie case of age discrimination." *Arthur*, 593 F. App'x at 216. To do this, he

> must show that he (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside of the protected class or someone "substantially younger."

*Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 837 (E.D. Va. 2015). Once the plaintiff has established a prima facie case, it becomes the employer's burden to "articulate a legitimate, non-discriminatory reason" for the adverse action. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). Finally, assuming the employer has met its burden of production, the plaintiff must prove that the employer's proffered justification was pretextual. *See id.*; *Gott v. Town of Chesapeake Beach*, 44 F. Supp. 3d 610, 615 n.10 (D. Md. 2014).

This case, however, is a long ways from trial. And it is well settled that, at the motion to dismiss stage, a plaintiff in an employment discrimination suit need not commit to either the direct or indirect method of proving his claim. *See Chen*, 2016 WL 4539204, at *17 (stating that, at the

6

motion to dismiss stage, "these approaches merely serve to inform a court's evaluation of the allegations"). What is required, rather, is that he "allege facts to satisfy the elements of [the] cause of action created by [the] statute" under which he seeks relief. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). Here, the pertinent statutory elements are twofold: first, that the employer discharged the plaintiff, and, second, that it did so "because of such individual's age." § 623(a)(1).

Defendants argue the second element is unsatisfied here, asserting that Mr. Anglemyer has failed to adequately plead "but for" causation because he "has offered contradictory rationales for his termination, and his own pleadings suggest a more plausible explanation." Reply 12, ECF No. 21. To be clear, though, it is never the employee's burden, at any stage of the proceedings, to show that discriminatory animus was the "sole" cause of the adverse action. *See Arthur*, 595 F. App'x at 220; *Buckner v. Lynchburg Redev. & Housing Auth.*, 262 F. Supp. 3d 373, 377 (W.D. Va. 2017). At the summary judgment stage, it would be sufficient to show that his age "actually played a role" in the employer's decision-making process and "had a determinative influence on the outcome," *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), even if other, non-discriminatory considerations may have factored into the decision, *see Arthur*, 595 F. App'x at 220; *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010). And here at the motion-to-dismiss stage, the plaintiff need only allege facts that, taken as true, permit a reasonable inference that age-based discrimination was the primary, decisive factor precipitating the adverse action. *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 220 (4th Cir. 2013).

As to this last point, two Fourth Circuit cases strike me as especially illustrative. First, in *Ray v. Amelia County Sheriff's Office*, the Court of Appeals concluded that the district court had

erred in dismissing a woman's ADEA discrimination claim "based upon its finding that her own complaint produced a legitimate, non-discriminatory reason for the defendants' termination of her employment that rebutted her prima facie case." 302 F. App'x 209, 211 (4th Cir. 2008) (per curiam). In explaining why the complaint was sufficient, the appellate court noted that it had alleged "several possible reasons for the termination of her employment that [were] related to her age" – for example, that the employer wanted "younger-looking employees" at the front desk, wanted to replace the woman with someone "who was less familiar with official policies and procedures," and disapproved of the woman's "desire to utilize her accrued annual leave benefits." *Id.* at 211-12. The court acknowledged that the complaint "indicate[d] that there were other ostensible reasons why her employment was terminated," but concluded that "the inclusion of those stated reasons in her complaint does not establish at the pleadings stage that she is not entitled to relief." *Id.* at 212.

The Fourth Circuit reached a similar conclusion in *Buchhagen v. ICF International, Inc.*, reversing a district court's dismissal of an employee's ADEA discrimination claim. 545 F. App'x 217 (4th Cir. 2013) (per curiam). There, the appellate court was satisfied with the complaint's allegations of disparate treatment and causation, which included assertions that the employee's supervisor denied her opportunities that had been extended to younger workers; "played favorites" with younger staff members; transferred some of the employee's responsibilities to younger, less experienced colleagues; and placed the employee on a performance-improvement plan, without doing the same for younger workers who had made similar mistakes. *See id.* at 220. Notably, the Fourth Circuit acknowledged that some of the allegations in her complaint "cut against her claim to relief." *Id.* For example, it noted that the supervisor had hired her when she was in her mid- to late-60s and had agreed to pay her substantially more than she previously had been earning. *See*

8

*id.* The complaint also described behavior on the employee's part that "could be construed as problematic or even insubordinate." *Id.* While characterizing the issue as a "close question," the Fourth Circuit concluded that the inclusion of these facts "do[es] not foreclose her claim to relief at this stage of the proceedings, where [the court] is obliged to accept [the employee's] factual allegations as true and to draw reasonable inferences in her favor." *Id.*

## B.

Here, Defendants argue the Complaint fails because it "asserts factual allegations plausibly indicating Defendants terminated [Mr. Anglemyer] because of [their] displeasure [with] his handling [of] an alleged workplace violence complaint." Mot. to Dismiss 2. But Defendants have it backwards. The issue, as *Ray* and *Buchhagen* make clear, is not whether a person reading the complaint might reasonably infer that non-discriminatory reasons animated the employer's actions. It is whether, despite references to facts that conceivably might undermine the plaintiff's theory, the complaint alleges enough facts to permit a plausible inference that age discrimination prompted the employer's decision. *See Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (explaining that, under Rule 12(b)(6), the court "must consider the plausibility of inferring discrimination based on [the plaintiff's] allegations in light of an 'obvious alternative explanation' for the conduct" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009))).

Mr. Anglemayer, in my view, has met his burden. His Complaint alleges that Mr. Smith "pushed him on the issue of retirement" during their June 6, 2017 meeting and at one point said, "[Y]ou're not getting any younger." Compl. ¶ 14. It also alleges that Mr. Smith selected someone 15 to 20 years younger than Mr. Anglemyer to replace him as president. *See id.* ¶ 19.

Defendants urge me to focus on Paragraph 18, which alludes to "Mr. Anglemyer's handling of another employee's threat of workplace violence." *Id.* ¶ 18. They quote this paragraph as

stating that, on the day he was fired, "Plaintiff met with Mr. Smith 'to discuss an incident involving Mr. Anglemyer's handling" of this matter – an allegation that, in Defendants' view, "plausibly indicat[es] Defendants terminated him because of its displeasure" with his conduct. Mot. to Dismiss 10 (quoting Compl. ¶ 18). This, however, is a partial quotation, and a misleading one at that. What the paragraph actually says is that Mr. Anglemyer "met with Mr. Smith, *supposedly* to discuss an incident involving Mr. Anglemyer's handling" of the alleged threat. Compl. ¶ 18 (emphasis added). The word "supposedly" signals that the stated reason for meeting with Mr. Anglemyer was pretextual. Without that word, the sentence has an entirely different meaning, as though Mr. Anglemyer was admitting that his termination occurred at the conclusion of a discussion about the way he had handled the employee's threat. Mr. Anglemyer, though, has admitted nothing of the sort, and to selectively edit what his pleading actually said in order to change its meaning is disingenuous, and inconsistent with the candor owed by counsel to the Court.

To be clear, Mr. Anglemyer's Complaint never states that his handling of the alleged threat was in any way improper or that Mr. Smith was displeased with him for it. It simply asserts that this issue, whatever it entailed, was the stated purpose of the meeting that culminated in Mr. Anglemyer's termination. Were I to speculate that Mr. Smith must have been displeased with Mr. Anglemyer's response to the threat, and that this was the true reason for terminating him, I would be drawing an inference in Defendants' favor, when the case law unequivocally requires me to do just the opposite. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

I conclude, accordingly, that this Complaint plausibly alleges that Defendants fired Mr. Anglemyer because of his age. Mr. Anglemyer has stated a claim for relief under the ADEA's anti-discrimination provision.

C.

Defendants, nonetheless, would have me look outside of the four corners of the Complaint, noting that district courts may take judicial notice of "matters of public record." Reply 3 (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Mr. Anglemyer's OSHA whistleblower charge, they say, is a judicially noticeable matter of public record. *See id.*

Defendants rightly acknowledge that a court "takes notice of a public record not for the truth of its contents, but for the fact that the record exists." *Id.* at 4 (citing *Clear Def., L.L.C. v. ClearDefense Pest Control of Greensboro, LLC*, No. 17-1139, 2018 WL 5281912, at *1 n.1 (M.D.N.C. Oct. 24, 2018)); *see* Fed. R. Evid. 201(b); *see also Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009) (declining to judicially notice decision documents relating to mining discharge permits because the parties "clearly and reasonably disagree about the meaning to be ascribed" to them); *Niner v. Garrett Cty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *5 (D. Md. Aug. 15, 2018) (stating that a court may, under some circumstances, "take judicial notice of the existence and contents" of EEOC proceedings but "may not take judicial notice of the truth" of the statements those records contain (quoting *Clarke v. DynCorp. Int'l LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013))). In their view, the mere existence of the OSHA whistleblower charge is fatal here because, as discussed above, an ADEA plaintiff must plead "but for" causation. Mr. Anglemyer, they reason, cannot plausibly assert that he was fired because of his age if, in his whistleblower charge, he advances the contradictory theory that the company fired him in retaliation for the actions he took in response to the June 15, 2017 threat. *See* Mot. to Dismiss 10.

This argument will be fair game on summary judgment or at trial. Defendants, though, have not identified any authority for the proposition that a theory advanced in an administrative charge precludes an employee from later advancing an alternate theory in a civil complaint. I do not see why it should. OSHA's proceedings are entirely separate from the proceedings here. And as this case has not yet entered the discovery phase, there is no way for this Court to assess whether Mr. Anglemyer had a valid basis to file the OSHA whistleblower charge or whether he continues to stand by it. These issues can, and should, be explored in discovery. At this point, though, my task simply is to assess whether Mr. Anglemyer has, in this Court, alleged a plausible claim of discrimination under the ADEA. I conclude that he has.

### Count 2: ADEA Retaliation

Defendants raise similar challenges against Mr. Anglemyer's ADEA retaliation claim. Their argument, in short, is that he has failed "to plead any factual allegations from which the Court could infer any causal connection between protected activity and an adverse action." Mot. to Dismiss 15.

Under the ADEA, an employer may not "discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA]." 29 U.S.C. § 623(d). As with discrimination claims, a plaintiff alleging retaliation under the ADEA may prove his case under the *McDonnell Douglas* framework. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc). By that route, the plaintiff first bears the burden of establishing a prima facie case of retaliation, which requires a showing "that: '(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action.'" *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 221 (4th Cir. 2013) (per curiam) (quoting *Laber*, 438 F.3d at 432). If he

succeeds, the employer must, in turn, produce "a legitimate, non-discriminatory reason for" the adverse action. *Laber*, 438 F.3d at 432. Lastly, the employee must "show that the [stated] reason is false and, ultimately, that the employer retaliated against him." *Id.*

In *Buchhagen*, a case I discussed in some detail above, the Fourth Circuit's analysis of the employee's ADEA retaliation claim centered on whether she had pleaded a prima facie case of retaliation. 545 F. App'x 217, 221 (4th Cir. 2013). It concluded that she had and that the district court had therefore erred in dismissing her claim under Rule 12(b)(6). *See id.* I will apply the same standard here, asking, in effect, whether Mr. Anglemyer has met his burden under the first step of the *McDonnell Douglas* framework. *See id.*; *see also Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018); *Shenton v. Aerojet Rocketdyne, Inc.*, No. 18-38, 2018 WL 4289326 (W.D. Va. Sept. 7, 2018); *Royster v. Gahler*, 154 F. Supp. 3d 206, 233-35 (D. Md. 2015), *abrogated on other grounds by Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97 (4th Cir. 2019).

Under the first element, a plaintiff must allege that he engaged in a protected activity. "An activity is protected when the plaintiff has 'an objectively reasonable belief that [he] was complaining about' discriminatory conduct." *Fisher v. Winston-Salem Police Dep't*, 28 F. Supp. 3d 526, 532 (M.D.N.C. 2014) (quoting *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 671 (D. Md. 2008)). Here, the Complaint alleges that, in their June 6, 2017 meeting, Mr. Anglemyer "discussed and complained that his age was a factor in Mr. Smith's decision to push him into retirement." Compl. ¶ 16. Defendants have not questioned that this was a protected activity.

Turning to the second element, a plaintiff must allege that the employer took a materially adverse action against him. *See Fisher*, 28 F. Supp. 3d at 532. An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs.*, 117 F. Supp. 3d 708, 720 (M.D.N.C. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Mr. Anglemyer purports to have suffered three adverse actions, alleging Defendants denied him a salary increase, terminated his employment, and refused to comply with the terms of the contract they negotiated in June 2017. *See* Opp'n 21, ECF No. 20. Defendants have not disputed that these actions, as alleged, qualify as materially adverse.

Defendants do, however, contest whether Mr. Anglemyer has met his burden of alleging a causal link between the protected activity and the adverse action. To plead a causal link, the plaintiff must, at a minimum, allege that the person responsible for the adverse action was aware that the plaintiff engaged in a protected activity. *See Gordon v. Napolitano*, 863 F. Supp. 2d 541, 550 (E.D. Va. 2012). Here, the Complaint alleges that Mr. Smith was the person who fired Mr. Anglemyer, and that he did so some time after their June 6, 2017 meeting, when Mr. Anglemyer accused him of age discrimination. Compl. ¶¶ 16, 18, 20. For present purposes, then, Mr. Smith's awareness of the protected activity is not in doubt.

Beyond this, courts "often look to the temporal proximity to infer a causal connection between the protected activity and the retaliatory act." *Blakney v. N.C. A&T State Univ.*, No. 17-874, 2019 WL 1284006, at *21 (M.D.N.C. Mar. 20, 2019). It has been said that a "'lengthy time lapse' between an employer's awareness of protected activity and the adverse action 'negates any inference' of a 'causal connection' between the two. *Shenton*, 2018 WL 4289326, at *6 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)). In *Shenton v. Aerojet Rocketdyne, Inc.*, Judge Moon observed that courts in this circuit have found that gaps of 10 weeks or more between protected activity and adverse action were too long to infer causation – at least, on the basis of temporal proximity alone. *See id.* (citing cases).

Mr. Anglemyer's Complaint accuses Mr. Smith of "push[ing] him into retirement" (effectively denying his request for a salary increase) in the same meeting in which Mr. Anglemyer complained of age discrimination. Compl. ¶ 16. It then alleges that Mr. Smith fired him (and, by extension, nixed their agreement to make him a consultant) exactly five weeks later. *See id.* ¶ 18. I am satisfied that these actions were sufficiently temporally proximate to make a prima facie case of causality, which is all that is required at this stage of the proceedings. *See Buchhagen*, 545 F. App'x at 221.

Defendants argue, yet again, that the Complaint "plausibly indicat[es] Defendants terminated him because of [their] displeasure [with] his handling [of] an alleged workplace violence complaint," and that the OSHA whistleblower charge substantiates that version of events. Reply 16. They reason, accordingly, that the alleged adverse actions could not have been retaliatory. I have already explained, though, that the Complaint does not, in fact, allege that Mr. Smith was dissatisfied with Mr. Anglemyer's response to the June 15, 2017 threat; it simply states that this incident was "supposedly" the intended focus of their discussion in the meeting that ended in Mr. Anglemyer's termination. I also explained that, while I may take judicial notice of the OSHA charge's existence, it does not follow that any potentially inconsistent claims raised in this lawsuit are necessarily implausible.

Mr. Anglemyer, it seems safe to say, will have to answer for the contents of his OSHA charge at a later stage of these proceedings. I find, though, that his Complaint states a claim for relief. Defendants' motion to dismiss is therefore denied.

## ORDER

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendants WCS Construction, LLC and William C. Smith & Co., Inc.'s Motion to Dismiss (ECF No. 15) IS DENIED; and

2. Defendants SHALL FILE an answer to the Complaint within 21 days of this Order.

Date:

7/30/19

Paul W. Grimm
United States District Judge